IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC BERRINGER,                      :
          Petitioner                 : CIVIL ACTION
                                     : No. 1:00 CV-1994
          v.                         : (JUDGE RAMBO)
                                     : (MAGISTRATE JUDGE BLEWITT)
PENNSYLVANIA BOARD OF PROBATION AND  :
PAROLE, et. al.,                     :
          Respondents                :


MEMORANDUM RESPONSE

   AND NOW, comes, Eric Berringer, (Petitioner), who files this
Memorandum Response, in support thereof represents the following:
1. The historical facts of this case were adequately set forth in
the initial habeas filed and present the same fact and legal
theory presented in the Petition for Administrative Review filed
with the Board and the Petition for Review filed in the
Commonwealth Court.


2.              EXHAUSTION OF STATE REMEDIES

   The Commonwealth attorney asserts the petitioner has not
sought discretionary review of the Supreme Court of Pennsylvania
and suggest this court should dismiss the writ of habeas for
failure to exhaust state remedies. In addition, in footnote (3) on
page 5 of the answer the Commonwealth Attorney agues infra that
the application can be dismissed on the merits, notwithstanding
the exhaustion of state remedies.

   First, the Pennsylvania Supreme Court responded to O'Sullivan
v. Boerkel, _.U.S._, 119 S.Ct. 1728 (1999), that discretionary
review by the Supreme Court of Pennsylvania is not necessary for
exhaustion of state remedies for purposes of seeking federal
relief. See IN RE EXHAUSTION OF STATE REMEDIES IN CRIMINAL AND
POST CONVICTION CASES, NO 218 Judicial Administrative Docket

No. 1.    Secondly, a request for discretionary review would result in futile endeavor.    There exist an overwhelming record of adherence to Weaver, supra, which was a response to the U.S. Court of Appeals in Burkett.    Therefore, the only issue that can be considered outside the Boards discretion is race or sex, which is not at issue here.    See generally <u>Bonilla v. Vaughn</u>, 1998 U.S. DIST. LEXIS 12684 (E.D. Pa. Aug. 14, 1998). Clearly, since there exist no liberty interest in a first parole, there exist no avenue for a Pennsylvania Prisoner to seek relief from administrative agency laws. I.D.    The Commonwealth Attorney does correctly note Coady v. Vaughn, is pending before the Third Circuit and questions have been requested for certification from the Pennsylvania Supreme Court regarding any avenues of recourse at Court of Appeals Docket No. 98-1311.    Clearly, in light of there being no recourse available, petitioner can seek redress under the futile doctrine. Accord <u>Santana v. Febton</u>, 685 F.2d 71, 75 (3rd Cir. 1982).    Moreover, since the federal courts have been overwhelmed with petitions challenging the board, much confusion has been formulated on how to proceed by different District Courts, which has been brought to the attention of the Third Circuit in Coady v. Vaughn.    Moreover, the present law dictates discretionary review is not available for those who challenge the Boards discretion in the denial of parole.    The Commonwealth response as to this issue is baseless in law and fact.

3. SUBSTANTIVE DUE PROCESS VIOLATION IN BOARDS DECISION

The Petitioner in his request for Administrative Relief demonstrated the Board made an arbitrary decision to deny parole based upon an erroneous review of the historical facts of the case.    See Exhibit (a) attached hereto, being the original petition filed, which the Commonwealth Attorney has not provided for review.    The Petitioner was eligible for parole on two separate occasions.    See "Green sheets" attached to answer of the Commonwealth Attorney at Exhibit c and d thereof.

Specifically, the Petitioner argued he has completed all programs and gained a DOC recommendation at both parole

2

interviews.    With a degree of specificity, the petitioner has achieved the following while incarcerated:

i)Victim Impact on Crime classes, ii) R.E.T. group therapy, iii) T.C.U. Program in house, iv) Exodus House Drug and Alcohol Program, in house, v) vocational and education course, which include, Masonry, Plumbing, Chain Saw Operator, the petitioner has earned his GED and Penn State Course in Business.    Note worthy, a DOC recommendation at both parole interviews.

The Board by the clear language of their orders clearly direct the Petitioner to complete prescriptive programs.    The Board applies the plain language of its amended policy in the parole process, as the specific term is stated "safety of public".

Clearly, our Third Circuit has settled that a state prisoner may state a claim for violation of [his] or her substantive due process rights based on a denial of parole. Block v. Potter, 631 F.2d 233, 236 (3rd Cir. 1980). The Third Circuit affirmed the rationale that a legislative grant of discretion does not amount to a license for arbitrary behavior. Burkett v. Love, 89 F.3d 135, 139 (3rd Cir. 1996).   In Monroe v. Thigpen, 932 F.2d 1437, 1442 (11th Cir. 1991), (the court held knowingly relying upon false information as a reason to deny parole is 'arbitrary and capricious' and violates substantive due process).    Under this light, a evidentiary hearing should be granted for the Board to present the petitioner's file for determination of whether their assessment for parole was made upon the correct historical facts, or upon some ulterior motive, such has a misinterpretation of federal regulations to gain funding.

Nevertheless, in Block, the Third Circuit explained that while a prisoner does not have a liberty interest in parole per se, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons. Block 673 F.2d at 236.

Clearly, a liberty interest will come into the main steam of this issue, petitioner will concedes there exist no right to parole.    Rather parole is a mercy and grace.   However, when a

parole policy based on discretionary functions it at issue, a due process challenge can be raised when the discretion exercised violates the constitution and equal protection of law.

Here, the state can not show a rational relationship to a legitimate government interest to deny parole.

The correct analysis for this determination is to review the manner in which the board determines parole. Applying the correct Parole Act to the Petitioner; would be to review Section 21 of the Act of August 6, 1941, P.L. 861 as amended, 61 PA. Cons. Stat. Ann. §331.21.

A comprehensive review of those guidelines as well as the relevant information required, the Board can not justify its denial of this Petitioner's parole, insofar as there exist no offending of a government interest. In relying upon the Boards own "green sheets" it is clear they found the Petitioner has not completed his programs and/or earned a DOC recommendation, which is clearly based upon impermissible criteria which is frivolous.

Clearly, although the Board has not provided this court with any other reasons for the denial of parole, this court must resolve the dispute. Wolf v. McDonald, 418 U.S. 539, 559 (1974); Hewitt v. Helms, 459 U.S. 460 (1983). In conclusion the parole policy decision making process violates substantive due process as the Board denies parole upon assessment of historical facts that are false and cannot be substantiated by the petitioner's record.

4.    RETROACTIVE APPLICATION OF NEW POLICY/REGULATION

The Petitioner has maintained the contention the Board has applied the Amended Prole Act to the determination of his parole.

First, the plain language of the boards 'green sheets' state the "safety of the public". Clearly, all green sheets prior to the Amended version of Pa. Code 61 §331.1 (1996). In pertinent part the amended version reads:

",The Board shall first and foremost seek to protect the 'safety of the public". See Commonwealth Attorney's answer at p., 6 note 6.    Here, the issue states an expost facto challenge, because of the clear difference in the statutes. Marshall v. Garrison, 659

F.2d 440, 444-45 (4th Cir. 1981).

Clearly, applying the new version of the Prole Act to the petitioner does offend ex post facto concerns as it creates further punishment than originally annexed by the original punishment.

The Petitioner has two valid points for review, first, the retroactive application of the amended parole statute violates ex post facto, two, guidelines that were amended and applied here, are laws for purposes of ex post facto concerns.

During the petitioner's parole interview he was instructed that five votes were needed for his release on parole. Under the correct parole statute would have only required two votes. This criteria includes, certain points for a violent crime, aggressive behavior, victim injury, and under the old guidelines, no point was given for substance abuse, here, it is unclear of the exact amount of points, as the board has been silent on the matter. However, under the old guidelines the petitioner would have been eligible for parole. In light of applying the new guidelines, the board would bar parole and increase the punishment.

It can not be disputed by the certified record maintained at the Board of Probation and Parole, that the petitioner was required to obtain five votes for parole, rather than two under the correct statute. The increase in votes required mirror the new policy/regulation as the new guidelines constitute a change in punishment and place the petitioner at a disadvantage. The standard for determination of this issue is found in Miller v. Florida, 482 U.S at 432.

Essentially, each parole application in light of the new guideline has effectively became another year sentence decision in violation of the Eighth Amendment of the United States Constitution. See Akins v. Snow, 922 F.2d 1588, 1563 (11th Cir)("For ex post facto purposes, parole eligibility must be considered part of any sentence), cert. denied, Snow v. Akins, 501 U.S. 1260 (1991). Clearly, while an increase in punishment attaches to ex post facto concerns, legislative intent of this amended parole statute does not demonstrate it run retroactively

to those convicted prior to its enactment. Accordingly, a evidentiary hearing is required to settle this dispute as to the criteria considered by the Board, if no evidentiary hearing is granted, the Boards own green sheets do in fact mirror the language of the amended version of the Parole Act.

Under the law of this Circuit, parole guidelines may be considered laws for purposes of the ex post facto clause. Accord U.S EX REL. Forman v. McCall, 709 F.2d 852 (3rd Cir. 1983).

7.        RETROACTIVE APPLICATION OF FEDERAL GRANTS

The Petitioner withdrawals this issue. Specifically, the Board has created enough subterfuge on this matter that no inmate can ever prove. In addition, Judge Joyce recently elected to the Superior Court communicates with Gary Lucht from the Prole Board has published case authority explaining the 85% issue for grants is achieved by 85% of serving the minimum sentence.

Worthy of note, is Pennsylvania Law does not permit any inmate to be released on 85% of their minimum, rather its 100% plus, and is further subterfuge to deny relief. See Commonwealth v. Balwin, _.Pa.Super._, 760 A.2d 883 (2000). Although the Petitioner and those trained in law agree the law of the given by Justice Micheal T. Joyce to be in error, as the court writes Pennsylvania does not apply the second provision of 42 U.S.C. Section 13704(a)(3)(a) to parole decisions.

CONCLUSION

In light of the foregoing, it is respectfully requested this Honorable Court hold a evidentiary hearing, rather than dismiss the petition on its face, as live testimony with actual evidence would one and for all place to rest numerous habeas petitions filed on parole issue's in Pennsylvania.

Respectfully        submitted,

Eric Berringer

CERTIFICATE OF SERVICE

The undersigned, hereby certifies that a true and correct copy of the within documents were served this 24th day of January, 2001 to the persons indicated below, in accordance with F.R.A.P.


CLERK OF COURTS (two copies)
UNITED STATES DISTRICT COURT
U.S. COURT HOUSE
228 Walnut Street
PO BOX 983
HARRISBURG, PA 17108


SETH A. MENDELSON, ESQUIRE
DEPUTY ATTORNEY GENERAL
15th Floor, Strawberry Square    (1 copy)
HARRISBURG, PA 17120


s/ Eric Berringer
ERIC BERRINGER

COMMONWEALTH OF PENNSYLVANIA
BOARD OF PROBATION AND PAROLE

ERIC BERRINGER,                      : PAROLE NO. 501AF
      Petitioner              : INSTITUTION NO. BV2424
                                      :
         v.                       :
                                        :
PENNSYLVANIA BOARD OF PROBATION:
and Parole,                          :
      Respondent              :

PETITION FOR ADMINISTRATIVE RELIEF

AND NOW, comes, Eric Berringer, (Petitioner), who files this
request for administrative relief, pursuant to 2
PA.C.S. §§701-704, in support thereof represents the following:

1. On May 24, 2000, the Board as recorded had the petitioner
served by the DOC with its action that indicates the following:
"Following an interview and review of your file, the
Pennsylvania Board of Probation and Parole has determined that
**the mandates to protect the safety of the public and to assist
in the fair administration of justice cannot be achieved through
your release on parole. you are therefore refused parole and
ordered to:**

a)Be reviewed in or after May, 2001.

b)At your next interview, the Board will review and consider:
i) Whether you have received a favorable recommendation for
parole from the Department of Corrections.

ii) Whether you have maintained a clear misconduct record and
completed the Department of Corrections, prescriptive
program(s).

2. The Boards action violates the Fourteenth Amendment of the
United States Constitution, substantive due process, and Abused
its discretion in the denial of equal protection under law,
insofar as the Board has discriminated upon the appellant,
placing him within a certain class, as more specifically set
forth:

A) Accordingly, under the recent decision by the United States
Supreme Court, a state prisoner now must exhaust all available
state remedies, prior to seeking federal relief, including
Discretionary review of the State Supreme Court. See <u>O'Sullivan
v. Boerkcel</u>, _.U.S._, 119 S.Ct. 1728 (1999).  In addition, since
the petitioner under the circumstances, will properly file a
Civil Rights Action under 42 U.S.C. Section 1983, and other
grounds through a Federal Writ of Habeas Corpus, pursuant to 42
U.S.C. Section 2254, appellant must by law seek relief pursuant
to Administrative Agency Law, 2 PA.C.S. Section 701-704.  The
Agency Law applies "to all Commonwealth Agencies regardless of
the fact that a statute expressly provides that there shall be
no appeal from an adjudication of an agency, or that the
adjudication of an agency shall be final or conclusive, **or shall
not be subject to review.**
61 P.S. § 331.19 states:

"It shall be the duty of the board, upon the commitment
to prison any person whom said board is herein given the power
to parole, to investigate and inform itself respecting the
circumstances of the offense for which said person shall have
been sentenced, and, in addition thereto, it shall procure
information as full and complete as may be obtainable with
regard to the character, mental characteristics, habits,
antecedents, connections and environment of such person...Said
investigation shall be made by the board so far as may be
practicable while the case is recent, and in granting paroles
the board shall consider the nature and character of the offense
committed, any recommendation by the trial judge, the general

committed, any recommendation by the trial judge, the general character and history of the prisoner and the written or personal statement or testimony of the victim or the victims family pursuant to section 22.1 of this act...

The Board in light of the above forementioned, has jurisdiction to hear this administrative request, as this is not a challenge to denial of parole, but rather this is a challenge to the process of parole in which the board in its parole process decision making policy violated the Constitution, and abused its discretion in the application of the parole process.

B) Petitioner avers the board in its parole process included for a second time, the petitioner must complete precriptive programs by the DOC and earn a DOC recommendation. To the contrary, the petitioner has completed all prescriptive programs and earned a recommendation within the two applications for parole, which each were rejected raising the same finding by the board.

The Petitioner in the rehabilitative process has successfully completed the following prescriptive programs:

 i) Petitioner has completed the Impact on Crime Class.

 ii) Petitioner has completed the R.E.T. group therapy at the prison.

 iii) Petitioner has completed the T.C.U. program, which is an in house setting designed to correct aggressive behavior.

 IV) Petitioner has completed the Exodus House Drug and Alcohol Program, which is in house designed as group meetings, in addition to phase groups conducted by a Drug and Alcohol counselor.

 V) Petitioner has completed vocational and education courses which include, Masonry, Plumbing, Chain saw operator, petitioner earned his GED and attended courses in Business.

Clearly, the Board has violated its own statute in the decision making process as defined under §331.19.

Therefore, it is clear the Board made an arbitrary decision violating substantive due process. <u>Block v. Potter</u>, 631 F.2d

233, 236 (3rd Cir. 1980)).  The Board by law should be precluded from applying criteria erroneously to the historical facts of the petitioner's rehabilitative efforts.

C) Petitioner avers the Board on two occasions have applied the law that violates the Fourteenth Amendment of the United States Constitution.

The Board as evidence by the First order, see Appendix (a) found as part of the parole process, the petitioner can not be released because the fair administration of justice would not be served.  The Board in this instance, applied the same process as did previously in the parole process. See Appendix (b) attached hereto.

A comprehensive review of all the boards regulations, and policy, clearly indicate the Board is abusing its discretion as a matter of law, and has no authority to increase the punishment imposed by the trial court.  Specifically, since this matter will be reviewed by a federal court, the historical facts are as a matter of assay essential to the parole process as indicated under §331. 19.

The petitioner on the evening of July 3, 1991, with several young people his age, gathered in Mission Field on the Southside of the City of Pittsburgh to watch the fireworks display.  A keg of beer was purchased from money chipped in by the group of young citizens.  Much drinking occurred, in which the Petitioner not by choice, confronted Don Lucas, in which there was a prior incident involving Mr. Lucas and the Petitioner.  After arguing the Petitioner struck Mr. Lucas, a short time thereafter, Steve Parsons confronted the Petitioner and struck the petitioner in the face with a beer mug.  As the petitioner was attempting to stand up, he pulled a handgun striking Mr. Parsons in the abdomen.

And as noted by the trial court Mr. Parsons completely recovered.  However, during this incident a second shot by accident struck Ms. Holen, which unfortunately caused paralysis from Ms. Holen's waist down, which is bladder and bowel

-4-

incontinence.

These historical facts are written directly from the finding of the trial court.

The petitioner has a result of this incident was given a sentence of not less the eight years, nor more than twenty years.   The petitioner entered a plea of guilt to the offenses of; Aggravated Assault (two counts), Recklessly Endangering Another Person, (two counts), Violation of the Uniform Firearms act, firearms not to be carried without a license.


Clearly, the statue does allow the board to consider the impact of the victim, however, the statute does not grant the board authority to substitute the trial court's imposition of sentence, as the term "fair administration of justice" demonstrates the Board is in disagreement with the sentence, actually increasing the punishment, which it not permissible under law or the Constitution, as it implicates an Eighth Amendment violation as well as violates the due process concerns under the Fourteenth Amendment.  If the Board means to apply the victim impact, it should so state such a finding.  The Board should be precluded from this arbitrary process that violates the Constitution.

D) Petitioner avers the Board has continued to violate the Fourteenth Amendment by a parole process that is discriminatory in nature, by placing the petitioner in a certain class, that violates the Fourteenth Amendment.

Specifically, we all can agree the parole board has decreased its parole releases by a great number after the Mud-man Simmon incident, and McFadden matter. Our Governor has implemented the Five Years Policy on Crime, and Public Safety, which is a silent Policy outlined for Board considerations, which actually violates the Fourteenth Amendment.

The Board as society is becoming to know, issue's arbitrary decisions based on impermissible criteria to exceed the punishment of those convicted of violent crimes by a general percentage of 85% of the maximum sentence.

Selective parole processing violated the "prototypical denial of equal protection under the Fourteenth Amendment. See Willobrook v. Olech, 68 LW 4157 (2000). Which is clear that a class of one person, can state an equal protection claim, as here, the petitioner can seek redress under a 1983 action for the board violating his equal protection right under the Fourteenth Amendment.

The Boards decision process is "irrational and wholly arbitrary", which there exist an intentional difference, because the Board demands further punishment.

WHEREFORE, it respectfully requested the Board reconsider and vacate its last order and apply the statute in the parole process with legal competent discretion.

Respectfully submitted,